### CAMERON–HAWN REALTY CO. v. CITY OF ALBANY.

(Supreme Court, Appellate Division, Third Department. November 10, 1909.)

1. MUNICIPAL CORPORATIONS (§ 368*)—PAVING CONTRACTS—LIABILITY OF CONTRACTOR—REPAIRS.

Where a company contracted with a city to furnish material and labor necessary to construct a pavement and to keep the work in good repair for two years, the contract being prepared by the city and the work being done under its superintendence, in conformity with its plans and specifications, and the material to be used being prescribed by the city, the company was not liable, after the city's acceptance of the work, for failure to keep the pavement in repair for two years, where its defective condition resulted from the defective plan and method of construction adopted by the city, under which a good pavement could not be constructed.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 901; Dec. Dig. § 368.*]

2. MUNICIPAL CORPORATIONS (§ 358*) — CONTRACTS — ACTION BY CONTRACTOR — CONDITIONS PRECEDENT—CITY ENGINEER'S CERTIFICATE.

Where a contractor furnished materials and executed work according to the city's plans and specifications, it was the duty of the city engineer to furnish a certificate, and his refusal to do so was unreasonable; and hence the certificate was not a condition precedent to an action to recover a balance due on the contract.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 890; Dec. Dig. § 358.*]

Smith, P. J., and Sewell, J., dissenting.

Appeal from Judgment on Report of Referee.

Action by Cameron-Hawn Realty Company against the City of Albany. Judgment for defendant, and plaintiff appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Frederick W. Cameron, for appellant.

Arthur L. Andrews, for respondent.

COCHRANE, J. On the 1st day of April, 1905, the plaintiff entered into a contract with the city of Albany to furnish the material and labor necessary to construct an asphalt pavement in one of the streets of said city. Among the conditions of the contract were the following:

"In consideration of the price for laying and maintaining the pavement, the contractor must keep the pavement in repair, as hereinafter provided, for a period of ten years from the date of the acceptance of the work by the city. The maintenance consists in repairing, renewals, and furnishing materials necessary to maintain the surface of the street paved by the contractor at all times in a perfect state of uniformity. The uniformity of the street shall be

equal to that possessed by it when first accepted, and shall present no marked hollows or projections to admit of water standing on the crown or the gutters. The surface of the street shall not show any cracks, scaling, or other signs of disintegration by the action of the frost and weather, and the pavement shall not show any wear greater than is usual with asphalt block pavements of the best quality under equally heavy traffic.

"In addition to the ten years' maintenance of the asphalt pavement, all the work herein provided for shall be kept in good condition and repair by the contractor, without notification from the city, for a period of two years from the date of its acceptance by the city, and in case the contractor neglects or refuses to repair the pavement, or other work herein specified, and to restore the same to the grade and to an even and true shape and form of surface, when the same shall be necessary, the commissioner of public works shall have the right to cause said work to be done and charge the expense thereof to the contractor or his sureties; and the city treasurer will retain for the period of two years from the date of said acceptance 5 per cent. of the amount due or to become due under the contract, and shall, by such contract, have the right to pay the expense of said repairs and restoration on the certificate of the commissioner of public works out of the 5 per cent. retained by him, or to collect such cost and expense from such contractor or his sureties."

It was also agreed that the work and materials were to be in strict conformity in every particular with the plans and specifications, which were made part of the contract. This action is brought to recover, among other things, 5 per cent. of the amount due under the contract, which, according to the provisions thereof above quoted, was retained in behalf of the defendant for the purpose of repairing and restoring the pavement, and which amount was stated in the contract to be a guaranty that the work would be kept in proper condition and repair as required by the specifications.

The learned referee found that the plaintiff failed to keep the work done in good condition and repair for the period of two years; that the commissioner of public works of the city of Albany caused the necessary repairs and restoration to be made; that the expense thereof was $3,161.75, which was paid by the defendant; and that the amount due to the defendant, after applying the amount retained, was $669.96. The judgment determines that the plaintiff is not entitled to recover the 5 per cent. of its contract price expended by the city in restoring the pavement, and also charges the plaintiff with the additional amount of $669.96 expended by the defendant for that purpose, in addition to said 5 per cent. of the contract price retained by defendant. The learned referee also found as a fact that the plaintiff—

"performed the work and furnished the materials in accordance with the conditions thereof, and performed all the conditions thereof on its part to be performed; that during the time of the performance of said work the defendant inspected the materials furnished and the work performed, and on or about the 4th day of December, 1905, accepted the work in said contract mentioned as having been done in accordance therewith, and the materials as having been furnished as provided for in said contract."

It also appears that the contract was prepared by the city and the work was done under its superintendence and in full conformity with its plans and specifications. The fact is that the city specified a defective plan and method of construction, which, although fully and fairly executed, was insufficient to keep the pavement in repair; and the question for determination is whether the plaintiff can recover its

contract price without repairing the pavement for two years after its acceptance by the city, although the plaintiff has in every respect complied with the plans and specifications adopted and required by the city.

In MacKnight Flintic Stone Company v. Mayor, etc., of New York, 160 N. Y. 72, 54 N. E. 661, the plaintiff contracted to make a boiler room water-tight in the manner and under the conditions prescribed in specifications provided by the city, and also agreed to turn over the work guaranteed absolutely water and damp proof for five years from the date of the acceptance of the work. The plaintiff conformed to the plans and specifications, but the boiler room proved not to be water-tight. The court held that the guaranty of the plaintiff applied to its own work and material, but not to the defective plan of the defendant, and that plaintiff could recover. It is stated in the opinion:

"It would not be reasonable to hold the parties to have intended that the plaintiff was to do a great deal of work and furnish a large quantity of materials according to the specifications of the defendant and under the direction of its officers, with no right to vary from the materials or construction specified, and yet get no pay for it unless it produced a certain result, without very plain language to that effect, which we do not find in the instrument before us, although it is elaborate in form and embraces the most minute details. Parties might make such an agreement; but, if the language used admitted of a different construction, the courts would be apt to adopt it, and thus avoid the conclusion that an impossible result was intended. The fault of the defendant's plan should not prevent the plaintiff from recovering payment for good work done and good materials furnished precisely as the defendant required. The reasonable construction of the covenant under consideration is that the plaintiff should furnish the materials and do the work according to the plan and specifications, and thus make the floors water-tight so far as the plan and specifications would permit."

That case seems to be applicable here, and, if applicable, a reversal of this judgment must follow. As indicated in that case, if the plaintiff had executed a plan of its own, resulting in a proper and sufficient pavement, it would not have been a performance of its contract, because it was bound hand and foot to the plan of the defendant. It had no discretion as to the material to be used or the manner in which the work should be done. It was an impossibility for the plaintiff to construct the pavement according to the terms of the contract, and at the same time produce such a pavement as the defendant required. The reasonable interpretation of the contract, therefore, is that plaintiff was not to keep the pavement in repair as against the defective plan provided by defendant.

The case cited also disposes of the contention that the certificate of the city engineer was a condition precedent to the right of plaintiff to maintain this action. It was his duty to give such certificate, and his refusal to do so was unreasonable.

The judgment should be reversed on the law and facts, the referee discharged, and a new trial granted, with costs to the appellant to abide the event. All concur, except SMITH, P. J., and SEWELL, J., who dissent.